UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARC PHAM,

                         Petitioner,

      v.

                                           9:15-CV-1370
                                           (DNH)
M. KIRKPATRICK, Superintendent, Clinton
Correctional Facility,

                         Respondent.

_____

APPEARANCES:                                OF COUNSEL:

MARC PHAM
Petitioner, Pro Se
12-A-4342
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN           DENNIS A. RAMBAUD, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorneys for Respondent
The Capitol
120 Broadway
New York, New York 10271

DAVID N. HURD
United States District Judge

## DECISION AND ORDER

## I. INTRODUCTION

      On September 18, 2015, petitioner Marc Pham ("Pham" or "petitioner") filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."); Dkt.

No. 1-1, Affidavit in Support of Habeas Corpus Petition ("Pet. Aff."); Dkt. No. 1-2, Appendix A

("Appx. A"); Dkt. No. 1-3, Joint Appendix ("Joint Appx."); Dkt. No. 1-4, Memorandum of Law

("Pet. Mem.").[1]  Petitioner challenges his 2012 judgment of conviction, following a jury trial in

Albany County Court, of Rape in the First Degree, Criminal Sexual Act in the First Degree,

Criminal Contempt in the First Degree, Criminal Contempt in the Second Degree, and

Tampering with a Witness in the Fourth Degree.  Pet. at 1.  Petitioner raises six grounds for

habeas relief:

(1)     petitioner's right to confront witnesses was violated when the trial court received
into evidence the "complainant's statements to the sexual assault forensic
examiner accusing petitioner of raping and sexually assaulting her";

(2)     petitioner's right to due process was violated when the trial court admitted the
victim's statements to a witness as excited utterances;

(3)     the trial court improperly admitted hearsay testimony relating to the victim's
statements contained in a lost voice mail recording;

(4)     the evidence was insufficient to support his convictions for first degree criminal
sexual act and first degree contempt;

(5)     counsel was ineffective for failing to object to hearsay evidence of "prior bad
acts and uncharged crimes"; and

(6)     counsel was ineffective because he failed to object to the witness's testimony
relating to the "lost voice mail recording."

Respondent opposes the petition.  Dkt. No. 12, Response; Dkt. No. 12-1,

Respondent's Memorandum of Law ("Resp. Mem."); Dkt. No. 12-2, State Court Records

("SR"); Dkt. No. 13 and 13-1, Transcripts ("T").[2]  For the reasons that follow, Pham's petition

is denied and dismissed.

---

[1]  The cited page numbers for the petition (Dkt. No. 1), petitioner's affidavit (Dkt. No. 1-1) and petitioner's
memorandum of law (Dkt. No. 1-4) refer to those generated by the Court's electronic filing system ("ECF").  The cited
page numbers for Appendix A (Dkt. No. 1-2) and the Joint Appendix (Dkt. No. 1-3) appear at the bottom right of each
page.

[2]  The cited page numbers for the response (Dkt. No. 12), respondent's memorandum of law (Dkt. No. 12-1),
and the transcripts (Dkt. Nos. 13 and 13-1), refer to those generated by ECF.  The "SR" page numbers for the state
court records filed at Docket Number 12-2 appear at the bottom center of the page.

## II. **RELEVANT BACKGROUND**

On November 4, 2011, an Albany County grand jury issued a Second Superseding Indictment charging Pham with one count each of Rape in the First Degree (Penal Law § 130.35(1)), Criminal Sexual Act in the First Degree (Penal Law § 130.50(1)), Criminal Contempt in the First Degree (Penal Law § 215.51(b)(iv)), Tampering with a Witness in the Fourth Degree (Penal Law § 215.10(a)), and two counts of Criminal Contempt in the Second Degree (Penal Law § 215.50(3)). Dkt. No. 12-2, at SR 67-72. The charges stem from petitioner's actions on the evening of September 18, 2011, when he forcibly engaged in sexual intercourse with the mother of his two children, from whom he was estranged and prohibited from contacting. *Id.*

Three months prior to trial, the twenty-six year old victim passed away due to an unrelated heart attack. Dkt. No. 13-1, at T 3. Accordingly, she was unavailable to testify at trial, but her sister and brother-in-law testified on behalf of the prosecution. According to the victim's sister, Christine, the victim began dating Pham when she was fifteen years old. The relationship was "on and off" again for approximately nine years. During that time, the victim and petitioner had two children. Dkt. No. 13-1, at T 4-5, 30-31.

Christine and her husband, Maurice, testified that the couple's relationship was "violent at times with fights and constant arguments," and that they often had to pick the victim up in the middle of the night after she called to say that she and Pham had been fighting. Dkt. No. 13-1, at T 6-7, 32-33. This turbulent relationship resulted in an order of protection, dated September 27, 2010, which prohibited petitioner from having any contact with the victim or his children until September 28, 2011. Dkt. No. 13, at T 323-323. A second order of protection was served on petitioner on September 19, 2011, barring

3

petitioner from having contact with the victim through March 20, 2012.  *Id.* at T 331-333.

According to Christine, her sister and petitioner had no relationship for a "significant period of

time" before petitioner sexually assaulted the victim on September 18, 2011.  Dkt. No. 13-1,

at T 376.

On September 18, 2011, Maurice received a phone call from the victim.  Maurice

testified that she was crying and very upset on the phone.  She told Maurice that Pham "had

just raped her and he wouldn't leave the house."  Dkt. No. 13-1, at T 8-10.  Maurice

immediately left and drove to pick up the victim.  *Id.* at T 10.  After arriving at the victim's

house, Maurice observed petitioner putting his shirt back on as he entered through the back

door.  *Id.* at T 11.  The victim was crying and pacing around the house saying "I can't believe

you did this to me and why would you do this."  She was calling petitioner a "bastard," a

"scumbag," and a "psycho."  *Id.* at 11-12.  Maurice ultimately grabbed petitioner and

slammed him to the ground, where he choked him "for like 30 seconds."  *Id.* at T 13.  At

some point, the victim called the police and Maurice sat with petitioner on the couch, waiting

for the authorities to arrive.  *Id.* at T 13-14.

During this time, Christine noticed that her sister had called and left a voice mail.  *Id.*

at T 33-34.  Christine testified that when she listened to the voice mail, she could hear her

sister crying and screaming at Pham.  According to Christine, her sister did not speak into the

phone directly, but she could hear her saying "How can you do that to me?  Why did you do

that to me?  You bastard."  *Id.* at T 34-35, 43-44.  After listening to the message, Christine

called her sister but there was no answer.  *Id.*  She then drove to her sister's house where

she saw the police talking to her.  The victim told Christine that "she got raped."  *Id.* at T 35,

4

44.

Officer Craig Whitney testified that he was the first officer at the scene.  Dkt. No. 13, at T 337-338.  The victim told him what happened and she agreed to go to the hospital for treatment and to have a sexual assault kit taken.  *Id.* at T 342-343.  After the victim left for the hospital, Officer Whitney arrested Pham.  *Id.* at T 345.

Dr. Lindsay Stokes, a resident physician at the hospital, testified that she performed a sexual assault examination of the victim.  *Id.* at T 353, 370.  First, she took a complete history, which included a recounting of the events that evening.  According to Dr. Stokes, the history is crucial to help diagnose and treat the patient, because it allows the examiner to determine where the patient was physically injured and to assess any psychiatric issues the person may have after being assaulted.  *Id.* at T 358-360, 375,

Dr. Stokes went on to read her medical reports to the jury, which included the statements the victim made to her during the sexual assault examination.  *Id.* at T 372-374. The victim told Dr. Stokes that Pham had come over that evening to pick up some of his belongings.  While he was there, he grabbed her and started kissing and licking her face.  She shouted at him to stop, but he "forced her to the floor and pulled off her pants and underwear."  *Id.* at T 380.  She then told Dr. Stokes that petitioner proceeded to forcibly engage in sexual intercourse with her.  *Id.*

Dr. Stokes also testified to performing a physical examination of the victim.  *Id.* at T 381.  She observed abrasions on the victim's right shoulder blade, as well as small dots similar to bruises on her wrists, indicating that the area may have been subjected to force.  *Id.*  While Dr. Stokes did not observe any tearing or bleeding to the victim's genital

5

area, she stated this was not inconsistent with the victim's account since "the majority of sexual assaults" do not result in such injuries because the vaginal area is made of "tissue that's meant to stretch." *Id.* at T 388-389. The victim was later released to her home with her sister Christine. *Id.* at T 388.

Between September 19 and September 23, 2011, Pham called the victim over two dozen times from jail. Dkt. No. 13-1, at T 42-43; Dkt. No. 14, Audio CDs.[3] The victim refused to take all but two of the calls. *Id.* During the two phone calls, petitioner urged the victim not to press charges and to tell the police she overreacted because they got into an argument. *Id.* The victim said she would not say that, but ultimately told petitioner she did not plan to talk to anybody. *Id.* She then told petitioner to stop calling her.

Finally, after the victim passed away in April 2012, Christine testified to visiting Pham in jail to tell him that his kids were safe and that she and Maurice were going to take custody of them. Dkt. No. 13-1, at T 36-37. According to Christine, petitioner seemed primarily concerned with the rape case, and asked if she had spoken to the District Attorney. *Id.*

Pham did not testify at his trial. His only witness was a friend who testified that the victim came to his house to pick petitioner up three or four times during the month of September 2011. The friend claimed their interactions were always "cordial." *Id.* at T 71-72.

On July 12, 2012, Pham was convicted of all charges against him.[4] *Id.* at T 167-170. He was sentenced on September 20, 2012 to an aggregate determinate prison term of

---

[3] The telephone calls placed by petitioner to the victim were introduced into evidence and played for the jury. Copies of the original CD recordings introduced at trial were filed as part of the State Court Record at Docket Number 14.

[4] The second count of second-degree criminal contempt was dismissed after the People moved to withdraw it at the close of their direct case.

twenty-two years, followed by fifteen years post-release supervision. *Id.* at 186-187.

Pham appealed his conviction to the Appellate Division, Third Department. Dkt. No. 12-2, at SR 1-63. On June 12, 2014, the Appellate Division affirmed his conviction, and the New York Court of Appeals denied leave to appeal. *People v. Pham*, 118 A.D.3d 1159 (N.Y. App. Div. 3d Dep't 2014), *lv. denied*, 24 N.Y.3d 1087 (2014).

## III. **The AEDPA Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant habeas corpus relief with respect to a claim adjudicated on the merits in state court if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (per curiam)

7

(quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, __ U.S. __, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting *Richter*, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). In other words, a state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Importantly, federal habeas courts must presume that the state court's factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1096 (2013).

## IV. DISCUSSION

### A. Petitioner's Right to Confront Witnesses

Pham claims in Ground One of his petition that his Sixth Amendment right to confront witnesses was violated when the trial court allowed the prosecution to introduce the victim's statements to Dr. Stokes the night she was raped. Pet. at 4.

Pham made this claim on direct appeal. The Appellate Division rejected the claim on the merits, finding that admission of the victim's statements to Dr. Stoke did not implicate the Confrontation Clause. *Pham*, 118 A.D.3d at 1162. Specifically, the Appellate Division held that the victim's statements were made for the purpose of receiving medical treatment and were therefore not testimonial. *Id*. In addition, the Appellate Division found the records containing the statements fell under the hearsay exception regarding business records. *Id.* ("Hospital records fall within the business records exception to the hearsay rule as long as the information relates to diagnosis, prognosis or treatment." (citations omitted)).

The Appellate Division's decision was neither contrary to, nor an unreasonable application of Supreme Court precedent. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court ruled that the Confrontation Clause prohibits admission of "testimonial" statements of witnesses who do not appear at trial unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 54.

The Supreme Court revisited the *Crawford* decision in the case of *Melendez-Diaz v.*

*Massachusetts*, which involved the introduction of forensic analysis reports which found that a substance seized from a defendant was cocaine. *Melendez-Diaz*, 557 U.S. 305 (2009). The Court held that such reports were testimonial since they were primarily "'made for the purpose of establishing or proving some fact'" at trial, and therefore the analysts who prepared the reports were witnesses for purposes of the Sixth Amendment and therefore required to testify. *Id.* at 310-311 (quoting *Crawford,* 541 U.S. at 51); *see also Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2180 (2015) ("Under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. 'Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.'" (quoting *Michigan v. Bryant*, 562 U.S. at 359)).

However, the Supreme Court in *Melendez-Diaz* also noted in dicta that "medical reports, created for treatment purposes . . . would not be testimonial" under the Court's decision. *Id*. at 312 n.2. In fact, the Supreme Court has never treated statements made for the purpose of medical diagnosis or treatment as testimonial, but has repeatedly noted that out-of-court statements contained in medical records are "by their nature, made for a purpose other than use in a prosecution." *Michigan v. Bryant*, 562 U.S. 344, 362 n.9. (2011); *Giles v. California*, 554 U.S. 353, 376 (2008) (reiterating that "only *testimonial* statements are excluded by the Confrontation clause. Statements . . . to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules." (emphasis in original)); *c.f. Ohio v. Clark*, 135 S.Ct. at 2181 (holding that statements by a child to a preschool teacher were non-testimonial; the primary purpose of the conversation was to

protect the child from further harm, and not to gather evidence to prosecute the abuser); *see also Duhs v. Capra*, 639 F. App'x 691 (2d Cir. 2016) (summary order) (holding that a petitioner's rights under the Confrontation Clause were not violated by the admission of a child's statement to a treating physician).

Here, the Appellate Division noted that "[d]etails of the abuse, even including the perpetrator's identity, may be relevant to diagnosis and treatment when the assault occurs within a domestic violence relationship because the medical provider must consider the victim's safety when creating a discharge plan and gauging the patient's psychological needs." *Pham*, 118 A.D.3d at 1162.

In line with this reasoning, Dr. Lindsay Stokes, who examined the victim in this case, testified that "all of the information in the medical records was relevant to and gathered for purposes of diagnosis or treatment." *Id.; see also* Dkt. No. 13, at T 353, 358-360, 370, 375. Although a secondary purpose of the examination may have been to gather evidence for a future prosecution, the Appellate Division noted that "the primary purpose of the examination was to care for the patient's health and safety." *Id.*

Given the Supreme Court's repeated confirmation that statements made for the primary purpose of receiving medical diagnosis and treatment are non-testimonial, the Appellate Division's decision finding the victim's statements to Dr. Stokes did not implicate the Confrontation Clause was neither contrary to, or an unreasonable application of, established Supreme Court law. As such, Pham's first ground for habeas relief is denied and dismissed.

**B.** __Petitioner's Ineffective Assistance of Counsel Claims__

Pham argues in grounds Five and Six that he is entitled to habeas relief because he received ineffective assistance of counsel. Specifically, petitioner maintains his counsel was ineffective because (1) he failed to object to the admission of "hearsay evidence of prior bad acts and uncharged crimes" committed by petitioner towards the victim (Ground Five) and (2) he failed to object "on hearsay and best evidence grounds" to the admission of the victim's statements contained in a lost voice mail recording (Ground Six). Pet. at 7-8.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show "both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 121-122 (2011) (*quoting Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984). Deficient performance requires a showing that counsel's performance fell below an objective standard of professional reasonableness. *Id.*; *Richter,* 562 U.S. at 104.

"*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and citation omitted). A petitioner must therefore overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even assuming a petitioner can establish counsel was deficient, he still must demonstrate prejudice. *Id.* at 693-694. This requires more than showing "the errors had some conceivable effect on the outcome," but that the counsel's errors were "so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 693. Meeting this burden is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 131 S. Ct. at 739-40 (citations and internal quotation marks omitted).

When reviewing a state court's decision under § 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Knowles*, 556 U.S. at 123 (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen §2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard." *Id.* Finally, it bears noting that it is "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

**1. Failure to object to testimony concerning petitioner's prior bad acts**

Pham maintains his trial counsel was ineffective for failing to object to unidentified hearsay evidence introduced by the victim's sister and brother-in-law concerning his alleged past abuse towards the victim. Pet. Mem. at 26-27. After considering the record in this case, petitioner has not rebutted "'the strong presumption' that counsel's attention to certain issues to the exclusion of others reflect[ed] trial tactics rather than 'sheer negligence.'" *Richter*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)); *accord United States v.*

*Cohen*, 427 F.3d 164, 170-171 (2d Cir. 2005) ("[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." (internal quotation marks omitted)).

Prior to trial, the trial court ruled that evidence of Pham's prior bad acts against the victim was admissible to understand the nature of his relationship with her. Therefore, any objection during trial would have been futile, and would only have served to highlight objectionable testimony to the jury. To be sure, during a *Molineux* hearing, the People indicated that Christine and Maurice were prepared to testify about their observations of the petitioner's relationship with the victim, including instances when they were called to the victim's residence during, or shortly, after fights had occurred. Dkt. No. 13, at T 87-88.

The trial court ruled, over Pham's opposition, that the sister and brother-in-law could testify about their "personal knowledge of the prior nature of the relationship" and about their "personal observations and knowledge of the relationship between [petitioner and the victim]." *Id.* at T 91. Specifically, the trial court noted that "if [the victim and petitioner] had a history of violence, I believe the case law in New York State would allow the jury to hear that proof as relevant to an understanding of the nature of the relationship" between them. *Id.* at T 90.

During the trial, Maurice testified that the relationship between the victim and Pham was "violent at times with fights and constant arguments." Dkt. No. 13-1, at T 6. Although he admitted never personally observing any fights, he stated that the victim "would call [at] odd hours in the morning stating that [she and petitioner] would be fighting and arguing" and ask to be picked up. *Id.* When he would go to the victim's house, he testified that items were

14

often misplaced, and the house was messy "like someone was in there fighting and [the victim] would be crying and her hair would be all messy." *Id.* at T 7. Christine also testified that she never observed Pham fight with the victim, but she frequently saw the "aftermath." *Id.* at T 32. Christine testified to receiving "numerous" calls from her sister in the middle of the night, asking to be picked up after a fight with petitioner. *Id.* at T 33.

In its summary opinion, the Appellate Division only addressed Pham's underlying claim, finding the "[t]estimony from the victim's sister and brother-in-law concerning the turbulent nature of [petitioner's] relationship with the victim was relevant and probative evidence on the issues of intent and forcible compulsion and provided necessary background regarding their history." *Pham*, 118 A.D.3d at 1160-1161. The Appellate Division did not specifically address petitioner's ineffective assistance claim related to his counsel's failure to object to the admission of this testimony. *Id.*

Where, as here, "a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."); *see also Johnson v. Williams*, 133 S. Ct. at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . . ").

Accordingly, the question in this case then becomes whether the Appellate Division

unreasonably concluded that Pham's counsel was not ineffective for failing to object to the alleged hearsay evidence – not whether counsel's failure to object to hearsay evidence amounted to ineffective assistance in the first instance. *See Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."). Upon review, the Appellate Division's decision was not contrary to, or an unreasonable application of *Strickland*.

First, Pham does not identify the portions of the testimony to which he believes his counsel should have objected. Moreover, considering the trial court's prior *Molineux* ruling, any objections by petitioner's counsel to the testimony would have been overruled. Finally, any objections by petitioner's counsel would likely have had the effect of eliciting additional, potentially damaging testimony, and only served "to highlight for the jury the argument that counsel found objectionable." *Bierenbaum v. Graham*, 607 F.3d 36, 57-58 (2d Cir. 2010). Therefore, counsel's decision to refrain from objecting likely reflected reasoned "trial tactics rather than 'sheer neglect.'" *Richter*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)). For these reasons, it was not unreasonable for the Appellate Division to find that petitioner failed to show his counsel was deficient under *Strickland.*

Since Pham failed to establish his trial counsel's performance was deficient under the first prong of *Strickland*, the second prong (i.e., prejudice) need not be addressed. *Strickland*, 466 U.S. at 697 (holding there is no reason to "address both component[s] of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one"). Petitioner's claim of ineffective assistance of counsel based on counsel's failure to object to hearsay evidence of petitioner's prior bad acts is therefore denied and dismissed.

**2.  Failure to object to testimony concerning the lost voice mail recording**

In Ground Six of the petition, Pham argues his counsel was ineffective because he failed to object to the admission of Christine's testimony concerning the voice mail her sister left her the night of the assault.  Pet. at 7-8.

Pham made the same claim on direct appeal, arguing that his counsel should have objected to the testimony on best evidence grounds because the voice mail was deleted, and also on hearsay grounds.  SR at 44.  The Appellate Division dismissed the claim stating that, since "the hearsay and best evidence objections would not have been fruitful, defendant was not deprived of effective assistance due to counsel's failure to make such objections." *Pham*, 118 A.D.3d at 1163.

Upon review, the Appellate Division did not unreasonably apply *Strickland* in dismissing Pham's claim.  At trial, Christine testified that she was at her mother-in-law's house the night of the assault.  While she was there, she received a missed call and voice mail message from her sister.  Dkt. No. 13-1, at T 34.  According to Christine, when she listened to the voice mail, she could hear her sister "screaming at [petitioner]" and that she sounded "[v]ery upset, sad, mad." *Id.*  She testified that she could hear her sister yelling "How can you do that to me?  Why did you do that to me?  You bastard." *Id.* at 35.  Christine tried to call her sister back, but there was no answer.  Christine then left, and drove to her sister's house. *Id.*  During cross-examination, Christine acknowledged that she assumed her sister was yelling at petitioner, and that the voice mail was accidentally deleted from her phone after she failed to continue to save it. *Id.* at 44-45.

Generally, state court rulings on evidentiary matters are matters of state law and "are

not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924-925 (2d Cir. 1988); *see also Toland v. Walsh*, No. 9:02-CV-0399 (GLS/VEB), 2008 WL 820184, *10 (N.D.N.Y. Mar. 26, 2008) ("The Second Circuit Court of Appeals has noted that in order for a petitioner to prevail on these claims, he would have to show that 'the erroneously admitted evidence, [when] viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985))).

Here, the Appellate Division ruled that the victim's statements were admissible as excited utterances - an exception under New York's hearsay rules. *Id.* As for failing to object to Christine's statements on best evidence grounds, the Appellate Division stated that secondary evidence "is permissible where there is proof 'that the loss or destruction of the [original] document has been sufficiently explained and that the mishap was an innocent one.'" *Id.* (quoting *People v. Joseph*, 86 N.Y.2d 565 (1995)).

During the trial, Christine explained that she listened to and saved her sister's voice mail several times, but that it was "automatically deleted." *Id.* Since Christine testified that "she was unaware that the deletion would occur," the Appellate Division concluded that any "best evidence objections would not have been fruitful" and that Pham "was not deprived of effective assistance due to counsel's failure to make such objections." *Id.*

Based on the facts above and the reasoning laid out by the Appellate Division, the trial court would have likely rejected any objection by counsel to Christine's testimony concerning the victim's voice mail under New York's prevailing evidentiary and hearsay rules. Therefore, Pham's counsel did not act objectively unreasonably by failing to object to the testimony, and

petitioner has not demonstrated his counsel's performance was deficient under the *Strickland* standard.  Instead, the Appellate Division's finding that petitioner's counsel satisfied *Strickland's* deferential standard was reasonable, and petitioner's claim is denied and dismissed.  *See Richter*, 562 U.S. at 105.

### C.  **Petitioner's Remaining Claims are Unexhausted and Procedurally Barred**

### 1.  **These claims were not fairly presented in state court**

Generally, a federal court may not issue a writ of habeas corpus unless a petitioner has exhausted all remedies available in state court.  28 U.S.C.A. § 2254(b).  This requirement is not satisfied unless each federal claim is "fairly presented" to the state courts.  § 2254(b), (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that a petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and he must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim").  This is to ensure that the state is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations omitted).

In order to satisfy the exhaustion requirement, state prisoners must present their claims to a state's highest court in a petition for discretionary review.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (noting that tho properly exhaust federal claims, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies.  *Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015

WL 6737031, at *6 (N.D.N.Y. Nov. 3, 2015) (citing *Colon v. Johnson*, 19 F.Supp.2d 112, 119-20 (S.D.N.Y. 1998)).

Here, Pham failed to exhaust Grounds Two, Three, and Four by failing to present these claims to the appropriate state court for review. For instance, in Ground Two of the habeas petition, petitioner argues his constitutional due process rights were violated when the trial court allowed Maurice to introduce statements the victim made to him shortly after the assault occurred. Pet. at 4-5. Prior to trial, the trial court ruled that "all things being equal, depending on the questions," the statements were admissible under New York's excited utterance hearsay exception. Dkt. No. 13, at T 103-108.

Although Pham argued on direct appeal that the victim's statements to Maurice did not constitute excited utterances under New York's exception to the hearsay rules, he never raised this claim in federal constitutional terms. Petitioner did not reference Supreme Court or federal court precedent in support of this claim on direct appeal, but simply characterized the claim as a violation of state evidentiary law. Petitioner's only possible reference to a constitutional claim was a single sentence in his Appellate Division brief that "[t]he harmless error standard for a hearsay violation is that for constitutional error." SR at 40, *citing People v. Johnson*, 1 N.Y.3d 302, 308, n.5 (2003).

However, Pham's "brief reference in his state court brief[ to *Johnson*] to set forth New York's harmless error standard did not give the Appellate Division any notice that a federal constitutional issue was being raised" in relation to the admission of the victim's excited utterances under New York's evidentiary rules. *Glisson v. Mantello*, 287 F. Supp.2d 414, 420 (S.D.N.Y. 2003); *Lewis v. Marshall*, 612 F. Supp.2d 185, 196-197 (N.D.N.Y. 2009) (finding petitioner's claim that admission of certain audio tapes violated his constitutional right to a fair

trial was unexhausted; the petitioner's "entire argument before the state courts [was] that the tapes . . . were inadmissible under state law."); *c.f., Jones v. Annucci*, 124 F. Supp.3d 103, 116 (N.D.N.Y. 2015) (finding petitioner failed to exhaust his ineffective assistance of counsel claims because "he did not present them as federal constitutional issues and cited only to state law rather than the federal standard"); *Kimbrough v. Bradt*, 949 F. Supp.2d 341, 362-63 (N.D.N.Y. 2013) (finding petitioner's claim that his aggregate sentence violated due process was unexhausted; the petitioner never presented this claim to the state court in constitutional terms, but instead relied only on state law). Accordingly, Ground Two of the habeas petition is unexhausted.

Similarly, in Ground Three of the habeas petition, Pham argues the trial court improperly allowed Christine to testify about the voice mail her sister left her the night of the assault. Pet. at 5-6. On direct appeal, petitioner only argued his counsel's ineffectiveness in failing to object to the admission of this testimony on New York's best evidence and hearsay grounds. SR at 42-48. Petitioner argues for the first time in this habeas petition that the State's failure to preserve the voice mail violated his constitutional rights to a fair trial. *Id.*

Pham never raised this claim in state court. Petitioner's only reference to a potential constitutional claim on appeal was his request, in the alternative, that the "Appellate Division consider the issue of "the erroneous receipt of the testimony . . . in the interests of justice . . . because the receipt violated [petitioner's] right to a fair trial." SR at 48. However, this alternative request was only made because petitioner's counsel had not preserved the underlying issue for appellate review because he failed to object to the testimony at trial. Accordingly, this request did not raise a federal due process claim, but simply invoked the Appellate Division's discretion to review unchallenged errors in the interest of justice as

permitted by New York's Crim. Proc. Law § 470.15(6)(a). SR at 48. Therefore, Ground Three of the petition is unexhausted.

Finally, Pham maintains in Ground Four of the habeas petition that the evidence was legally insufficient to support his conviction for first degree criminal sexual act and first degree criminal contempt. Pet. at 6-7. On direct appeal, petitioner only argued that his conviction of first degree criminal contempt was against the weight of the evidence. Petitioner did not argue his conviction for first degree criminal sexual act was against the weight of the evidence. Nor did petitioner raise a legal sufficiency challenge to either his criminal contempt or criminal sexual act convictions during any stage of appellate review.

Although "it is not necessary for a habeas petitioner to cite 'book and verse' of the Constitution" in order to exhaust a federal claim in state court, *Daye v. Att. Gen. of State of New York*, 696 F.2d 186, 192 (2d Cir. 1982), exhaustion does require that the petitioner "'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2015)).

"In developing and refining the 'fairly present[ed]' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." *Smith v. Duncan,* 411 F.3d at 349 (quoting *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005)); *Duncan,* 513 U.S. at 366 (stating that because the state and federal inquiries were "no more than somewhat similar" rather than "virtually identical," the petitioner did not fairly present his due process claim when he argued to the state appellate court that the trial court's failure to sustain an objection was a "miscarriage of

justice.").

As relevant here, although sufficiency and weight of the evidence claims are related, "each requires a discrete analysis." *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). The Second Circuit in *Parker v. Ercole* recently noted that New York's "weight-of-the-evidence claim requires more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses." *Parker,* 666 F3d 830, 833 (2d Cir. 2012) (citing *Bleakley*, 69 N.Y.2d at 495). In fact, "[t]he difference in standards is more than semantic; it can be outcome-dispositive." *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 WL 1300030 at *12 (S.D.N.Y. Mar. 23, 2015) (citing cases holding the evidence was legally sufficient but reversed as against the weight of the evidence).

Recent cases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that "a weight claim cannot stand in for a constitutional sufficiency claim when considering whether a habeas petitioner has exhausted state court remedies because the two claims are no more than somewhat similar." *Lopez,* 2015 WL 1300030 at *16; *see also Shuler v. Artus*, 9:15-CV-0399 (DNH), 2016 WL 698106, at * 4-5 (finding petitioner's legal sufficiency claim was unexhausted; petitioner's weight of the evidence claim on appeal did not "fairly present" a legal sufficiency claim to state court); *Williams v. Marshall*, No. 1:09-CV-7411, 2011 WL 2175810 at *8-9 (S.D.N.Y. Mar. 30, 2011) (concluding that even if petitioner pleaded a constitutional sufficiency claim in his habeas petition, such claim was not exhausted in state court; raising a state law weight of the evidence claim did not "fairly present" the constitutional sufficiency claim in state court) (citing *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006))*; Thomas v. Fischer*, No. 1:05-CV-

23

3010, 2007 WL 1988273 at * 3 (S.D.N.Y. Jul. 6, 2007) (concluding petitioner "did not 'fairly present' a federal insufficiency claim when he relied on an 'against-the-weight-of-the-evidence' claim," because the standards are not "so similar" that by presenting one, the petitioner could be said to have "fairly presented" the other) (quoting *Jackson v. Edwards*, 404 F.3d at 621)).

Here, the Appellate Division noted that Pham only challenged his conviction of criminal contempt in the first degree as against the weight of the evidence. *Pham*, 118 A.D.3d at 1160. The Appellate Division rejected petitioner's weight of the evidence claim without any mention of the standards governing the sufficiency of the evidence. *Id.* Based on a review of petitioner's appellate brief, and the Appellate Division's analysis of his claim as solely raising a weight of the evidence argument, the Court finds that petitioner did not "fairly present" a legal sufficiency claim in state court[5], and that Ground Four of his habeas petition is unexhausted.

## 2. **These claims are procedurally defaulted**

Pham's remaining claims are also procedurally defaulted because there is no remaining avenue by which he can properly exhaust them in state court. *Aparicio v. Artuz*,

---

[5] In *Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988), the Second Circuit remarked in a footnote that "New York courts, when reviewing the evidence in support of a criminal conviction, have consistently adhered to a standard that is virtually identical to the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319." Some courts have concluded, based in part on the *Liberta* footnote, that by raising a weight of the evidence claim, petitioners necessarily have raised a sufficiency claim. *See, e.g., Horne v. Perlman*, 433 F. Supp. 2d 292, 300 (W.D.N.Y. 2006); *Howie v. Phillips*, No. 1:03-CV-9757, 2004 WL 2073276 at *4 (S.D.N.Y. Sept. 17, 2004).

More recently in *Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012), the petitioner raised both a sufficiency claim and a weight claim on direct appeal. The Appellate Division ruled that the sufficiency claim was unpreserved and declined to review it in the interest of justice, and rejected the weight of the evidence claim on the merits. The Second Circuit noted that a weight claim "requires more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses," and found that "to the extent the Appellate Division decided that Parker's conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict." *Id.*

In contrast, however, Pham never even hinted at a sufficiency claim on direct appeal, and the Appellate Division never mentioned the standards governing the sufficiency of the evidence. *Pham*, 118 A.D.3d 1159.

269 F.3d 78, 90-91 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile").

The facts supporting Pham's remaining claims were apparent on the record and should have been raised on direct appeal.  However, petitioner can no longer file a direct appeal or leave application to exhaust these claims because a defendant is "entitled to one (and only one) appeal to the Appellate Division" and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas.); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying CPL § 440.10 (2)(c) to claims raised for the first time in federal habeas petition).

Procedurally defaulted claims are not subject to habeas review unless a petitioner can show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent.  *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency."  (citation omitted)).

To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule.  *Maples v. Thomas*,

___U.S.____, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

In this case, Pham has not alleged cause and prejudice for his default, and an independent review of the record reveals none. Nor has petitioner raised a claim of actual innocence such that failure to review his claims would result in a miscarriage of justice. Accordingly, based on a close review of the habeas petition and finding no basis to excuse petitioner's procedural default, this Court is barred from reviewing petitioner's remaining claims.[6] Grounds Two, Three, and Four of the habeas petition are therefore denied and dismissed.

## V. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1. The petition, Dkt. No. 1, is **DENIED AND DISMISSED**;

2. No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2)

---

[6] Even if the remaining claims were not procedurally defaulted, the Court finds petitioner's claims lack merit and that the Appellate Division's decision was neither contrary to, nor an unreasonable application of, relevant Supreme Court precedent.

requires.[7]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals (FED. R. APP. P. 22(b)); and

   3.  The Clerk of the Court shall serve copies of this Decision and Order upon the

parties in accordance with the Local Rules.

   IT IS SO ORDERED.

_____
United States District Judge

Dated:  September 21, 2016
        Utica, New York.

---

[7]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).